**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-22-08090-001-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Frank Joseph Delvecchio, | |
| Defendant. | |

Defendant Frank Joseph Delvecchio ("Delvecchio") appeals an Order by the U.S. Magistrate Judge ("MJ") requiring him to pay $4,271.22 to the United States government (the "Government") for damage he caused to property when he sprayed rocks and vegetation with orange paint. (Appeal)[1]; *U.S. v. Delvecchio*, No. 2:21-po-09185-ESW-1 (D. Ariz. Aug. 26, 2022), at Docs. 35 and 36 (the "Restitution Order").[2] He claims that the MJ erred because the damage was not permanent, and the amount of restitution ordered was not supported by the evidence. Upon review of the record and the parties briefs' and attachments, the Court affirms the Restitution Order.

**I.    Facts and Procedure**

Delvecchio, a retiree, enjoys spending time in the outdoors, including in the Coons

---

[1] References to Delvecchio's Appeal is as filed in this Court's appeals Docket No. 3:22-cr-08090-DJH-1 at (Doc. 1).

[2] References made in this Order are to the U.S. Magistrate Court Docket No. 2:21-po-09185-ESW-1 unless otherwise noted.

Bluff Recreation Area ("Coons Bluff") in the Tonto National Forest. (Op. Br. at 4)[3]. Concerned that hiking trails were poorly marked, he decided to mark the trails himself. (*Id*. at 5). So, he purchased Rust-Oleum Inverted marking paint at Home Depot and applied it to rocks, shrubs, and cacti in Coons Bluff. (*Id*.); (TR at 72)[4]. He understood that the Rust-Olium paint would eventually "go away." (TR at 40).

### A. The Defendant is Issued a Citation

In early 2021, U.S. Forest Service ("USFS") law enforcement officers began receiving reports of someone spray-painting rocks and trees with florescent orange paint in the Tonto National Forest. (Doc. 1 at 2); (TR at 7–8). On May 21, 2021, USFS Officer Stephanie Zacha ("Officer Zacha") responded to the Coons Bluff area because the alleged spray-painter was spotted. (Doc. 1 at 2). Officer Zacha saw Delvecchio "take a can of spray paint and apply paint to rock." (*Id*.) On approach, Officer Zacha noted that he had two cans of orange paint, and he had paint residue on his clothes and hands. (*Id*.); (TR at 50–51). Delvecchio said that he was marking the trail because the USFS had neglected to do so. (Doc. 1 at 2). Officer Zacha told Delvecchio that the area "is not a designated trail system," but rather provides access for USFS employees to feed the wild horses. (*Id*.) She then issued him a United States District Court Violation Notice (the "Citation") for "Damaging Any Natural Feature or Property of the U.S." in Coons Bluff under 16 U.S.C. § 55136 and 36 Code of Federal Regulation ("CFR") 261.9A. (TR at 9).

That day, Officer Zacha saw paint on fifty (50) different rocks, trees and features spanning the Coons Bluff and Goldfield Recreation Site. (*Id.* at 11, 13). An additional investigation revealed that other features, including shrubs, trees and Saguaro cacti, were also painted. (*Id*. at 34–40). In total, two-hundred twenty-six (226) items were marked with florescent orange paint. (*Id*. at 13).

Delvecchio made his Initial Appearance where he was advised of his right to

---

[3] References to Delvecchio's "Opening Brief" is as filed in this Court's appeals docket at (Doc. 5).

[4] "TR" refers to the Transcript of Record proceedings filed in the U.S. Magistrate Judge's docket at (Doc. 44).

1  counsel, that the CFR violation is a Class B Misdemeanor, and that the Government was
2  not seeking his detention. (Doc. 3). He was ordered released, with conditions, pending the
3  outcome of his case. (Doc. 5). Eventually, in May 2022, Delvecchio entered a guilty plea
4  to the Citation, without a plea agreement. (Doc. 17). The MJ ordered the U.S. Probation
5  Office to prepare a Presentence Investigation Report to assess Delvecchio's ability to pay
6  restitution. (*Id*.)

### B.     The Restitution Hearing

At the sentencing and restitution hearing, USFS Officer Robin Thies ("Officer Thies"), and Delvecchio testified. The Government and Delvecchio also offered evidence through Exhibits. (*See* Index).[5] The Government's Exhibits included photographs of the painted rocks and vegetation, and a quote for repair and restoration of the damaged items. (TR at 2–3) (listing Exhibits). Delvecchio's Exhibits also included photographs and a Declaration and Records from Rust-Oleum Corporation. (TR at 3–4); (Index Atch. 1 at 44–45, 54–61).

Officer Thies testified that although the USFS desired to remove the paint "to return it to its natural condition," it lacked the resources and manpower to do so. (TR at 19). The USFS estimated that restoration would take over one month to complete at about $300 per day, when it costs $80 per gallon for graffiti removal chemicals. (*Id*. at 19–20). However, the USFS lacked the ability to conduct the restoration so it contacted Natural Restorations, a non-profit organization specializing in graffiti removal, trash cleanup, and revegetation of cactus. (*Id*. at 15, 19–20). Natural Restoration provided the USFS with an estimate of $5,274.96 for the manpower, equipment rental, protective gear and chemicals necessary to remove paint from two-hundred twenty-six (226) damaged items. (*Id*. at 18–19); (Doc. 10-8 at 21).

In August 2022, after Delvecchio pled guilty but before the restitution hearing, Officer Thies revisited Coons Bluff to redocument the damage. (TR at 21). She

---

[5] References to the parties' "Index of Exhibits" and the Attachment therein are as filed in this Court's appeals docket at (Doc. 6).

photographed those items that still bore paint. Though she could not locate all two-hundred twenty-six (226) items, she documented one-hundred eighty-three (183) items, including rocks, trees and stumps, marked with the orange paint. (*Id*. at 22, 27–29); (Resp. Br. Ex. 8 at 22–34).[6] Officer Thies testified that she was unable to locate some features that had been painted, and some features showed some signs of faded paint. (TR at 23–24, 54–57). Officer Thies noted that some rocks had been spray-painted gray, in an apparent attempt to cover the orange paint. (*Id*. at 30, 33, 60–61). She also found that some previously painted features had been turned over, some had been exposed to the environment, yet paint was still apparent on those items she documented. (*Id*. at 23–24, 54–57).

Officer Thies sent some of her photographs to Natural Restoration and sought a revised restoration estimate for one-hundred eighty-three (183) items. (*Id*. at 22, 24–25). Natural Restorations provided a revised estimate of $5,228.75 for removing paint from one-hundred eighty-nine (189) items. (Resp. Br. Ex. 8 at 35); (TR at 47). At the conclusion of the hearing, the MJ ordered that Delvecchio be placed on probation for one-year. She took the restitution matter under advisement. (Doc. 34).

On August 26, 2022, the MJ issued an Order of restitution finding "that a fair and reasonable award of restitution to enable the USFS to remediate the damage Defendant has caused to the property of the United States is $4,271.22." (Docs. 35; 36). Delvecchio argues that the MJ clearly erred because he caused no permanent damage, and the Restitution Order is not based upon the evidence. The Court disagrees.

**II.  Law**

**A.  Jurisdiction**

The MJ had subject matter jurisdiction under 18 U.S.C. § 3401(a) because Delvecchio was charged with a federal misdemeanor. This Court has jurisdiction based upon the entry of amended final judgment by the Judge on August 26, 2022 under 18 U.S.C. § 3402. Delvecchio timely filed his Notice to Appealed on August 31, 2022. LRCrim. 58.2(a). Delvecchio is not in custody but is serving a term of probation as part

---

[6] References to the Government's "Response Brief" and Exhibits therein are as filed in this Court's appeals docket at (Doc. 10).

of his sentence.

### B. Standard of Review and Applicable Law

The legality of a restitution order is reviewed *de novo,* and factual findings supporting the order are reviewed for clear error. *United States v. Hackett*, 311 F.3d 989, 991 (9th Cir.2002); *United States v. Stoddard*, 150 F.3d 1140, 1147 (9th Cir.1998). The district court is obligated to review the entire record before making its findings of fact and conclusions of law.

### C. 36 C.F.R. and The Mandatory Victims' Rights Act

Title 36 C.F.R. 1.1 provides the Government with the authority to protect "persons, property, and natural and cultural resources within areas under the jurisdiction of the National Park Service." 36 C.F.R. 261.9 prohibits a person from "[d]amaging any natural feature or other property of the United States." Furthermore, the Mandatory Victims' Rights Act ("MVRA") states: "the court shall order . . . in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense[.]" 18 U.S.C. § 3663A(a)(1). The term "victim" means one directly and proximately harmed as a result of the commission of an offense. 18 U.S.C. § 366A(a)(2). Proximate cause is often explained as foreseeability, that is, whether the former event caused the latter. *Paroline v. United States*, 572 U.S. 434, 444 (2014). The government has the burden of establishing by a preponderance of the evidence that the victim's damages were caused by the conduct of which the defendant was convicted. *United States v. Peterson*, 538 F.3d 1064,1074 (9th Cir. 2008); *see also United States v. Rice*, 38 F.3d 1536, 1540 (9th Cir. 1994).

## III. Analysis

### A. Whether the MJ Erred Because the Damage Was Not Permanent

Delvecchio first asserts that the MJ "erred in awarding any restitution" because "any damage caused by [Delvecchio] is not permanent." (Op. Br. at 2). Though faded, damage to Government property was evident months after Delvecchio initially applied the paint, so his argument that there is insufficient record evidence showing actual losses is

nonsensical. (TR at 54). Delvecchio himself described "[he] only spray-painted rocks, dead trees, dead cacti, and one sign" and though "he painted a considerable number of items . . . they are barely noticeable." (Resp. Br. Ex. 2) (Defendant's Sentencing Memorandum). Though Delvecchio thought the paint would eventually "go away," his own evidence belies that because the paint can states "[t]his product is not water soluble and withstands general weathering," among other toxic warnings. (Index Atch. 1 at 44–45). Consequently, damage was present one-year and two-months after he applied the paint.

The United States Congress designates certain landscapes, including the Tonto National Forest, as warranting protection and maintenance for the enjoyment, education, and inspiration of this and future generations.[7] It matters not that the natural features that make up these landscapes are dead or dying. It is the act, itself, of damaging federally protected property – the natural features – that is penalized. So, when Delvecchio admitted the allegations in the Citation, he admitted that he "damage[ed] the rocks, trees and other natural features" in the Tonto National Forest." (Doc. 1 at 2). Therefore, the MJ had no discretion but to order him to pay restitution for causing that damage which the Government could prove by a preponderance of the evidence.[8] *See* 18 U.S.C. § 3663A(a)(1) ("[T]he court *shall* order . . . in the case of a misdemeanor . . . that the defendant make restitution to the victim of the offense[.]") (emphasis added). The only question now before the Court is whether the MJ erred in the amount of restitution ordered.

/ / /

---

[7] *See* The Forest Reserve Act of 1891.

[8] The MJ erred in not attributing the latter gray paint damage to the Defendant because its application was a proximate cause of Delvecchio's acts. The record supports that the gray paint would not have been applied if those rocks had been untouched. (TR at 50). Delvecchio's conduct need not be the sole cause of the loss, but the subsequent action that contributes to the loss. *See United States v. Gamma Tech Indus. Inc.*, 265 F.3d 917, 928 (9th Cir. 2001). The error is harmless, however, because the MJ's findings were based on the Governments concession that Delvecchio was not responsible for the latter applied paint.

### B.     Was the Amount of Restitution in Error

Delvecchio claims that the MJ clearly erred because the amount of restitution ordered did not comport with the Government's estimated restitution losses. (Op. Br. at 13–14). The Government responds that the damage caused by Defendant was not temporary, and that the restitution order of $4,271.22 "is based on a quote from a reputable non-profit organization." (Resp. Br. at 1). The Government asserts "it is quite clear" how the MJ reached this amount. (*Id*. at 19–20). As explained below, the MJ's Restitution Order lacked clarity but the Order, itself, was not in error.

A *de novo* review of the record, testimony, and evidence shows that the Government proved by a preponderance of the evidence that Delvecchio caused damage, actual and proximate, to USFS property. First, he admitted that he did, and he admitted into evidence the paint that he used to do so. Officer Zacha witnessed him apply the paint and found him in possession of the paint as well as with paint-stained hands and clothes. Second, the Government proved that over one-year after he applied the florescent orange paint, traces of it were still noticeable on 183 natural features. Last, the Government produced two restoration estimate for two-hundred twenty-six (226) and one-hundred eighty-three (183) items respectively. However, Natural Restoration's last estimate was for one-hundred eighty-nine (189), not for the one-hundred eighty-three (183) items as requested by the Government. (Resp. Br. Ex. 8 at 35); (TR at 47).

The MJ's Restitution Order explained "[T]he cost of remediation with a reputable company . . . was initially quoted in September 2021 at $5,274.96 based upon 226 damaged items. Most recently in August 2022, the cost of remediation with the same company was quoted at $5,228.75 based upon 189 damaged items. The cost per item therefore increased from $23.34 per item to $28.57 per item." (Doc. 35). The MJ observed that there was no explanation for the increased costs, then pronounced the $4,271.22 restitution order. The Order does not mention the one-hundred eighty-three (183) items in the Government's revised evidence log.

Though not stated clearly in the Restitution Order, it appears that the MJ considered

the evidence, then applied the reduced cost of $23.34 per item to the one-hundred eighty-three (183) damaged items found ($23.34 x 183 = $4,271.22). The Order was thus not error. *See United States v. Anderson*, 741 F.3d 938, 951 (9th Cir. 2013) ("[W]hen the basis of the [court's] calculation is clear" yet the court fails to make a pertinent fact finding, the restitution order may stand).

**IV.   Conclusion**

In sum, the Government establish by a preponderance of the evidence that Officer Thies reexamined the Coons Bluff area in August 2022 and located and documented one-hundred eighty-three (183) damaged items. (TR at 23). She was not able to locate all two-hundred twenty-six (226) items previously identified in May 2021. (*Id*.) Though she sought a revised quote for restoration of one-hundred eighty-three (183) items, she received a quote for one-hundred eighty-nine (189) items. (*Id*.at 47). The record does not include any reference to one-hundred eighty-nine (189) items damaged. So, it was reasonable for the MJ to hold Delvecchio accountable for the one-hundred eighty-three (183) in evidence, at the lower rate of $23.34 per item. Although the MJ's Order was unclear as to how the restitution amount was calculated, the amount ordered was not in error because it was based on the record evidence.

Accordingly,

**IT IS ORDERED** affirming the U.S. Magistrate Judge's Restitution Order that Frank Joseph Delvecchio pay Restitution to the Government in the amount of $4,271.22. *U.S. v. Delvecchio*, No. 2:21-po-09185-ESW-1 (D. Ariz. Aug. 26, 2022), at Doc. 36.

Dated this 10th day of February, 2023.

_____
Honorable Diane J. Humetewa
United States District Judge